UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHITTAKONE "ALAN" PHETSADAKONE,<br><br>Petitioner,<br><br>v.<br><br>Bruce SCOTT, Warden, Northwest ICE Processing Center; Cammilla WAMSLEY, Enforcement and Removal Operations, Seattle Field Office Director, U.S. Immigration and Customs Enforcement; Kristi NOEM, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Respondents. | CASE NO. 2:25-cv-01678-JNW<br><br>TEMPORARY RESTRAINING ORDER |

1. **INTRODUCTION**

The Court considers Petitioner Chittakone Phetsadakone's motion for a Temporary Restraining Order ("TRO") pending a decision on his habeas corpus petition. Dkt. Nos. 1, 2. After reviewing the parties' briefs, supplemental declarations, and conducting a hearing on September 5, 2025, the Court finds that

ORDER - 1

Phetsadakone has raised serious questions going to the merits of his claims and that the balance of hardships tips sharply in his favor, warranting temporary relief to preserve the status quo.

Phetsadakone is a Laotian refugee who came to the United States at age three and was ordered removed in 2000 after a federal fraud conviction. Because the United States could not remove him to Laos, he was released on supervision in 2001. For twenty-four years, Phetsadakone fully complied with his supervision while building a life with his wife and children.

In July 2025, ICE re-detained Phetsadakone during a routine check-in without prior notice or explanation and now threatens to remove him to Laos, or, he argues, a third country. Phetsadakone raises serious questions about the Government's alleged failure to follow required procedures when re-detaining someone released on supervision and about the validity of his underlying criminal conviction, the basis for his removal order. These serious questions, combined with the irreparable harm of deportation, justify temporary intervention to preserve the status quo until a preliminary injunction hearing can be held.

Thus, the Court GRANTS Phetsadakone's TRO motion for the reasons stated below.

ORDER - 2

## 2. BACKGROUND

Considering the parties' briefing, supporting exhibits, oral argument, and the record, the Court finds[1] the following:

Phetsadakone is a 47-year-old Laotian refugee who fled to the United States with his family as a child in 1981. Dkt. No. 1 ¶ 16–17. He became a lawful permanent resident as a young child. *Id.* ¶ 18.

In 1997, at the age of 18, Phetsadakone pled guilty to federal bank fraud. *Id.* ¶ 30. He was ordered removed to Laos in 2000, but after six months in detention, the Government could not arrange his removal. *Id.* ¶ 34–36. So in 2001, he was released on an order of supervision, which he asserts that he has fully complied with for twenty-four years. *Id.* ¶ 36, 41. During this time, Phetsadakone married and became the father of four children, three of whom live at home. *Id.* ¶ 37–38. He works two full-time jobs to support his family. *Id.* ¶ 39.

On July 21, 2025, during a routine check-in, ICE detained Phetsadakone, he claims, without notice or explanation and revoked his supervised release. *Id.* ¶ 42. ICE purportedly issued Phetsadakone a Notice of Revocation of Release, stating that "conditions had changed such that ICE could remove him to Laos" and that "a travel document is expected to be issued." Dkt. No. 8-1. At the TRO hearing, Phetsadakone denied receiving the notice. *Id.* ¶ 43–44. He remains detained at the Northwest ICE Processing Center in Tacoma, Washington. *Id.* ¶ 43–45.

---

[1] Findings of fact and conclusions of law made in connection with a temporary restraining order are not binding adjudications. *See Hordphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).

ORDER - 3

The Government subsequently obtained a travel document from Laos dated August 6, 2025. Dkt. No. 8-2 at 2. The Government represents that it does not currently intend to remove Phetsadakone to a third country, Dkt. No. 7 at 9 n.5, but that he is "currently programmed for the next charter removal flight to Laos, which is expected to occur in approximately 2-3 weeks." Dkt. No. 18-1 ¶ 7.

Phetsadakone filed a complaint and petition for a writ of habeas corpus challenging his re-detention and seeking to enjoin his removal. Dkt. No. 1. The petition raises three claims: (1) unlawful re-detention in violation of due process and governing regulations; (2) unconstitutional removal to a third country without required procedures; and (3) removal to a third country for punitive purposes. *Id.* at 23–24. Along with his habeas petition, Phetsadakone filed motions in a separate action for coram nobis relief and to reopen his case before the Board of Immigration Appeals, both challenging the validity of his underlying conviction. *Id.* ¶ 4, 33, 82; *see* Dkt. No. 3.

Phetsadakone moved for a TRO afterhours on August 29, requesting his release from ICE custody and an injunction preventing his removal pending resolution of these proceedings. Dkt. No. 2-1 at 13. The Government filed a timely opposition to the motion. Dkt. No. 7.

On September 4, the Government filed a supplemental declaration of ICE Deportation Officer Joshua Parker. Dkt. No. 18. Parker states he was not present during Phetsadakone's July 21 check-in, but asserts he later conducted an "informal interview" with Phetsadakone regarding the revocation. Dkt. No. 18-1 ¶¶ 4–6. Phetsadakone claims the interview never happened.

ORDER - 4

The Court held a hearing on September 5, 2025. Dkt. No. 20.

### 3. DISCUSSION

**3.1 The Court has subject-matter jurisdiction over Phetsadakone's claims.**

The Government argues that 8 U.S.C. § 1252(g) strips the Court of jurisdiction over claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." Dkt. No. 7 at 9-12. The Government contends that Phetsadakone's request to stay his removal pending his petitions falls within Section 1252(g)'s jurisdictional bar because it seeks to prevent execution of his removal order. But this argument fundamentally mischaracterizes the source of Phetsadakone's claim.

The Supreme Court has interpreted Section 1252(g) narrowly, limiting it to "three discrete actions": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*") (quoting 8 U.S.C. § 1252(g)) (emphasis in original). As the Supreme Court found, "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id*.

Phetsadakone's claims challenge the Government's failure to follow Due Process and regulatory procedures during his re-detention, the validity of his underlying conviction through coram nobis relief, and potential constitutional violations in third-country removal procedures. These claims fall outside Section

ORDER - 5

1252(g)'s narrow jurisdictional bar and present constitutional and procedural due process challenges rather than direct challenges to removal execution.

**3.2     Legal standard.**

The purpose of a TRO is to "preserv[e] the status quo and prevent[ ] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

The standard for issuing a TRO is "substantially identical" to standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A party seeking a TRO must demonstrate (1) that he is likely to succeed on the merits, (2) likely to suffer irreparable harm absent preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. These four factors—the *Winter* factors—must be shown whenever injunctive relief is sought. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

The Ninth Circuit takes a "sliding scale" approach to preliminary relief, where "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury, and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632

ORDER - 6

F.3d 1127, 1135 (9th Cir. 2011). Under this approach, "a stronger showing of one *Winter* factor [will] offset a weaker showing of another." *Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024).

### 3.3 Phetsadakone raises serious questions going to the merits of his claims.

The Court finds serious questions going to the merits of Phetsadakone's claims. First, there are serious questions about Phetsadakone's likelihood of success on his claim that ICE violated procedures it was bound to follow when revoking his supervised release. The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. Const. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). When ICE revokes supervised release, regulations appear to require an individualized determination about the likelihood of removal based on changed circumstances, followed by notice and an opportunity to respond. *See* 8 C.F.R. § 241.13(f), (i). Phetsadakone has plausibly alleged that the Government failed to follow these regulations in revoking his order of release and supervision. *See* Dkt. No. 2–1 at 16–18.

The Government's evidence of compliance with these procedures is severely deficient. At first, the Government conceded it was "unable to confirm whether Petitioner received an informal interview pursuant to 8 C.F.R. § 241.13(i)(3)." Dkt.

ORDER - 7

No. 7 at 7–8. The Government then submitted a supplemental declaration from Officer Parker, Dkt. No. 18, but at the hearing, Government counsel acknowledged that the evidence is "contested." When the Court asked what evidence beyond Parker's declaration substantiated that an informal interview occurred, Government counsel could point to nothing in the record.

The alleged procedural irregularities are substantial. While the Government submitted what appears to be a proof service for the July 21, 2025, Notice of Revocation, Phetsadakone denies receiving it and the notice itself bears no signature. Parker admits he was not present during the initial check-in but claims to have conducted an interview at an unspecified later time. These disputed facts and gaps in the Government's evidence undermine its claims that it followed the procedures required by its own regulations, which agencies must follow under the *Accardi* doctrine. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *see also Alcaraz v. I.N.S.*, 384 F.3d 1150, 1162 (9th Cir. 2004). Whether the Government followed these procedures when it detained Phetsadakone during a routine check-in after twenty-four years of compliance raises serious questions going to the merits of his Due Process claims for unlawful detention.

There are also serious questions about the validity of the underlying conviction that forms the basis for Phetsadakone's removal order. At the hearing, Government counsel conceded that the coram nobis motion "raises serious questions going to the merits."

Phetsadakone's coram nobis motion alleges that his criminal defense counsel provided ineffective assistance by failing to advise him about the immigration

ORDER - 8

consequences of his guilty plea. *United States v. Phetsadakone*, No. 2:96-cr-616-RSL-1 (W.D. Wash.), Dkt. No. 32 at 1, 10–13. "[D]efense counsel's failure to inform a client about his conviction's potential immigration consequences constitutes ineffective assistance of counsel." *United States v. Kroytor*, 977 F.3d 957, 960 (9th Cir. 2020) (citing *Padilla v. Ky.*, 559 U.S. 356, 374 (2010)). Likewise, "*affirmative misadvice* about the immigration consequences of a criminal conviction constitutes ineffective assistance of counsel." *Id.* at 961 (emphasis added) (citing *United States v. Kwan*, 407 F.3d 1005, 1015–16 (9th Cir. 2005)), *abrogated on other grounds by Padilla*. In the Ninth Circuit, this second rule applies retroactively. *Id.* at 961 (citing *United States v. Chan*, 792 F.3d 1151, 1155 (9th Cir. 2015)). The Government's concession that serious questions exist on this claim, combined with the potential that success would eliminate the predicate for removal entirely, weighs in favor of temporary relief.

Next, Phetsadakone also raises serious questions over potential third-country removal. As other judges in this District have found, "'noncitizen[s] must be given sufficient notice of a country of deportation that, given [their] capacities and circumstances, [they] would have a reasonable opportunity to raise and pursue [their] claim[s] for withholding of deportation.'" *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2097979, at *2 (W.D. Wash. July 25, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)). "'In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.'" *Id.* (quoting *Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016) (Mem.).

ORDER - 9

The Government does not defend the constitutionality of its third-country removal procedures in its opposition, arguing only that Phetsadakone's third-country removal claims are moot because ICE obtained travel documents to Laos. Dkt. No. 7 at 9 n.5. This procedural posture—where the Government concedes the legal framework by failing to defend it—further supports finding serious questions on the constitutional claims.

Finally, there are serious questions about whether transfer outside this district would violate Phetsadakone's right to counsel given his pending collateral proceedings. Dkt. No. 2–1 at 25. *See Baltazar-Alcazar v. I.N.S.*, 386 F.3d 940, 944 (9th Cir. 2004). ("The right to counsel in removal proceedings is derived from the Due Process Clause of the Fifth Amendment and a statutory grant under 8 U.S.C. § 1362."). Conduct by ICE, including detention transfers away from counsel, may interfere with an existing attorney-client relationship in contravention of a noncitizen's constitutional and statutory right to counsel. *See Rios-Berrios v. I.N.S.*, 776 F.2d 859, 862–63 (9th Cir. 1985) ("Although a deportation hearing is not a criminal matter and he had no Sixth Amendment right to appointment of counsel at government expense, due process mandates that he is entitled to counsel of his own choice at his own expense under terms of the Immigration and Nationality Act." (citation modified). The Government does not acknowledge or contest this claim in its opposition.

While serious questions on a single claim would suffice to support injunctive relief under the sliding scale approach, *see Versaterm Inc. v. City of Seattle*, C16-1217-JLR, 2016 WL 4793239, at *5 (W.D. Wash. Sept. 13, 2016), Phetsadakone has

ORDER - 10

raised serious questions on multiple independent grounds. These serious questions going to the merits, combined with the remaining *Winter* factors discussed below, justify temporary relief.

### 3.4 The remaining *Winter* factors support temporary relief.

The second *Winter* factor—irreparable harm—tips sharply in favor of Phetsadakone. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Nguyen v. Scott*, No. 25-cv-1398, 2025 WL 2097979, at *2 (W.D. Wash. July 25, 2025) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Id.* (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)). And immigration detention itself imposes recognized harms including family separation and economic hardship. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (identifying "the economic burdens imposed on detainees and their families" as irreparable harm caused by detention).

Phetsadakone's detention separates him from his partner and four children, three of whom live at home. Dkt. No. 1 ¶ 38. He is the family's primary breadwinner, working two full-time jobs before his re-detention. *Id.* ¶ 39. Removal to a third country would constitute irreparable harm, particularly given his refugee status and forty-four years in the United States.

And the threat of removal is imminent, requiring immediate intervention. While the Government's supplemental Parker declaration states that

ORDER - 11

Phetsadakone's removal is "expected to occur in approximately 2-3 weeks," Dkt. No. 18-1 ¶ 7, the Government couldn't guarantee this timeline at the TRO hearing. This uncertainty, combined with Phetsadakone's concern expressed at the hearing that there's nothing in place to stop an earlier removal, demonstrates the immediate nature of the threatened harm and the need for a TRO to preserve the status quo.

The final two *Winter* factors, which involve balancing the equities and considering the public interest, merge when the Government is party to a case. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020). These factors also tip sharply in Phetsadakone's favor. The public interest includes preventing wrongful removal, particularly where individuals face substantial harm. *Nken v. Holder*, 556 U.S. 418, 436 (2009). While the Government has an interest in executing removal orders, agencies cannot act unlawfully even pursuing legitimate ends. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021).

### 3.5 Phetsadakone's release from detention is necessary to restore the status quo ante litem.

The Court will order Phetsadakone's release from detention to restore the status quo ante litem. The "status quo ante litem" for purposes of injunctive relief "refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir.1963)). The last uncontested status here was Phetsadakone's release on supervision, which he maintained without

ORDER - 12

incident for decades. The Government's July 2025 re-detention—allegedly without following required procedures—created the current controversy. Restoring Phetsadakone to his prior supervised release status maintains the status quo ante litem and prevents irreparable harm while allowing full adjudication of his claims for injunctive relief and on the merits.

## 4.  CONCLUSION

Accordingly, Petitioner's motion for a temporary restraining order is GRANTED. Respondents and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert, or in participation with them are:

(a)  ORDERED to immediately release Petitioner from custody under the conditions of his most recent order of supervision;

(b)  PROHIBITED from re-detaining Petitioner in connection with his existing removal order without prior approval from this Court or until this order expires.

The Court FURTHER ORDERS the Parties to meet and confer and file a joint status report by September 9, 2025, (1) proposing a preliminary injunction briefing schedule, (2) indicating whether they believe a hearing is necessary, and if so, (3) indicating whether they plan to present live witnesses and other evidence at the hearing.

This order will remain in place until this Court issues a written order on Petitioner's forthcoming preliminary injunction motion.

Dated this 5th day of September, 2025 at 8:42 p.m. (PT).

Jamal N. Whitehead
United States District Judge

ORDER - 14